[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action, by writ and complaint, claiming a dissolution of the marriage of the parties and other relief, as on file, came to this court on September 3, 1991 with a return day of September 17, 1991, and thence to later dates when the parties appeared for a limited contested trial which was heard on October 21 and 22, 1992.
The Court, having heard the evidence, finds the following:
The wife, Patricia A. Krafick, whose maiden name was Patricia A. Bowen, was lawfully married to the husband, John H. Krafick, on December 27, 1958 at Waterbury, Connecticut. One party has resided continuously in this State twelve months next before the date of the filing of the complaint and all statutory stays have expired. The marriage of the parties has broken down irretrievably.
From a total of nine pregnancies, seven children have been born to the wife since the date of the marriage, all of whom are the lawful issue of this marriage, all of whom are alive, and none of whom are now minors. The children range in age from approximately 23 years to approximately 33 years. Two of said children reside with the wife in the marital home in Danbury. Neither of the parties had been married before.
The husband became 56 years of age on August 26, 1992 and the wife became 56 years of age on November 3, 1992. Each of them had CT Page 10381 completed four years of college at the time of the marriage in 1958. The husband has 30 post graduate credits but does not intend to formally seek a Master's Degree.
The parties originally resided in Norwalk where the wife had previously obtained a teaching position. Early in the marriage, they moved to Danbury where the husband was employed as a public school teacher.
The parties had three children including one set of twins in the first year and one half of their marriage. With a total of seven children born in the first eleven years of their marriage (the last child having been born December 24, 1969), as was not unusual in that era, the wife remained at home to provide care for the children. During that time, the husband worked at least two full time jobs.
The husband has been continuously employed as a public school teacher since 1958. He was employed in Danbury from 1958 to 1965 and from 1965 to date in the Bedford, New York Public School System. In addition, the husband has been employed as a night dispatcher for Hoffman Fuel Company continuously since 1967. The Hoffman position was full time year round for many years but in more recent years it has been full time approximately October through April of each year. He also worked additional jobs in the summers where possible. He has indicated that although he would be permitted to continue to teach, he would like to retire from teaching at the end of June, 1994, at which time he would probably also retire from Hoffman Fuel. He reports that he is in good health.
Over the years as the children became older, the wife became involved as a volunteer with church, school and community activities. In 1979, she worked part time at the Spring Street Bakery in Danbury. Since March of 1981, she has worked full time for the City of Danbury in their Welfare Department. Originally, she was hired as a caseworker but has since risen to the position of Assistant Director. She has indicated that her position is likely to be terminated on July 1, 1994 when the State of Connecticut is likely to take over the functions of her City Department. She is not certain whether she would be able to obtain another position with the City of Danbury should her present position be eliminated as expected, but she has indicated that she would like to continue working. She reports the state of her health as fair.
The wife and the husband testified to a variety of circumstances which they believe led to the breakdown of the marriage. CT Page 10382
Among other reasons, the wife claimed that, although she was in no way responsible for the breakdown of the marriage:
 1) There was excessive and continual drinking on the part of the husband (the husband testified that he consumed beer regularly on almost a daily basis but never missed any time from either of his two full time positions) and, although the wife complained to her husband about this behavior, the husband did not change said behavior.
 2) Lack of satisfactory interpersonal relationships including lack of a satisfactory sexual relationship, to which lack, the excessive use of alcohol was a contributing factor.
 3) The husband vacated the marital residence in February, 1991 and after residing with his parents for a short period of time, he moved into a residence he shares with another woman.
Among other reasons, the husband claimed that:
 1) The wife entered the marriage in a negative fashion (she became pregnant 3 months before the marriage) and the negative emotional impact of that event has remained throughout the marriage.
 2) That almost five years before he left, the wife told him that she was no longer going to have any sexual relationship with him and thereafter there was no sexual relations between the parties.
 3) Shortly before he left, his wife, in fact, told him to so leave. This followed discussions between the parties concerning their feelings towards each other and the realization that little, if any, relationship remained for them.
The Court has listened to the parties and their respective witnesses including those who testified concerning the valuations of various assets. The court has likewise reviewed all of the testimony, including the testimony of the children, and has reviewed the exhibits and the financial affidavits of the parties which reveal their assets, both real and personal as well as their income and earning capacity. In addition, the Court has taken into consideration all of the criteria set forth in Connecticut General Statutes Sec. 46b-81 (the assignment CT Page 10383 of property and transfer of title statute), and Sec. 46b-82
(the alimony statute).
Accordingly, the Court orders as follows:
A decree of dissolution of the marriage shall enter on the grounds of irretrievable breakdown of the marriage.
ALIMONY
The Husband shall pay to the wife as alimony, commencing one week from the date hereof and weekly thereafter, the sum of $300.00 per week.
Said alimony shall be secured by a Qualified Domestic Relations Order through the Husband's New York State Teacher's Retirement Plan. Said alimony shall terminate upon the happening of the first of the following events:
a) the death of either party;
b) the wife's remarriage;
c) the wife's cohabitation under the statute;
LIFE INSURANCE
Pursuant to Stipulation of the parties:
 1) The wife shall transfer to the husband, the Pruco life insurance policy #R0130335, which is reflected in her Financial Affidavit dated October 22, 1992, in the face amount of $51,314.96, and of which the husband is the beneficiary.
 2) The husband shall transfer to the wife, the Prudential-Bache life insurance policy (no designated number), which is reflected in his Financial Affidavit dated October 21, 1992, in the face amount of $50,000.00, and of which the wife is the beneficiary.
Except as set forth above, each of the parties shall retain their respective remaining life insurance policies and may change the beneficiaries listed thereon.
MEDICAL INSURANCE
CT Page 10384 If the wife does not have health insurance as an incident of her employment, the husband shall contribute one half of the cost thereof, of a medical insurance policy which shall be equivalent to the medical insurance policy in existence for his benefit, subject to such restriction as may be applicable to any then pre-existing condition of the wife. The husband shall have the right to obtain such policy for his wife's benefit. The husband's obligation under this paragraph shall terminate upon the happening of the first of the following events:
1. The death of either party.
2. The remarriage of the wife.
3. The cohabitation of the wife under the Statute.
4. The wife becoming eligible for Medicare.
PERSONAL PROPERTY
Except for two power saws, a hedge clipper and 1 bicycle which shall become the property of the husband, the wife shall retain all of the household furniture and furnishings at the marital residence located at 36 Valerie Lane, Danbury, Connecticut.
Except as set forth in the paragraph above, each party shall keep those items of tangible personal property which are currently in their possession and reflected on their respective Financial Affidavits. In particular, the wife shall retain the 1980 Pontiac and the 1986 Chrysler automobiles and the husband shall retain the 1987 Dodge Truck and the 1989 Cutty Cabin boat.
Each party shall keep their respective bank accounts, securities, IRA plans, and respective pension rights free and clear of any claims of the other, subject only to the Qualified Domestic Relations Order set forth above, with regard to the security arrangement for the payment of alimony.
BUSINESS INTERESTS
The husband shall transfer to the wife, all of his right, title and interest in and to the business known as HAYESTOWN PACKAGE (LIQUOR) STORE. The wife shall be responsible for any and all costs and expenses associated thereon including, but not limited to rent, insurance, all taxes, salaries, maintenance costs and the payment of the CT Page 10385 second mortgage on the marital residence, which mortgage was taken out to help finance the purchase of said business. The wife shall indemnify and hold the husband harmless from any claims and liabilities thereon.
REAL ESTATE
OLD SAYBROOK, CONNECTICUT
The wife shall retain her interest in and to the real estate located in OLD SAYBROOK, CONNECTICUT, which she owns with her brother and which real estate came solely from the wife's family. Said interest shall be free and clear of any claim of the husband.
36 VALERIE LANE, DANBURY, CONNECTICUT
The husband shall quit claim to the wife, his interest in and to the marital residence located at 36 VALERIE LANE, DANBURY, CONNECTICUT. The wife shall pay to the husband the sum of $30,000.00 as and for a property distribution. Said sum shall be paid as follows:
a) The sum of $10,000.00 on or before March 31, 1993;
 b) The additional sum of $10,000.00 on or before September 30, 1993; and
c) The balance of $10,000.00 on or before March 31, 1994.
These payments shall be due and payable without interest so long as they are made in a timely fashion. In the event any payment is not made in a timely fashion, then statutory interest shall accrue on the then remaining balance from the date of default. As security for this distribution of property, The wife shall execute a note and mortgage deed covering 36 Valerie Lane, Danbury, Connecticut, in form substantially similar to lending institution notes and mortgages covering residential real estate, including provisions concerning property insurance, attorney's fees in connection with collection efforts after default, and that the entire remaining balance shall become due and payable upon any refinancing or transfer of title of the subject premises.
The wife shall be responsible for any and all costs and expenses in connection with 36 Valerie Lane, Danbury, Connecticut including, but not limited to mortgage payments, all taxes, insurance and maintenance costs. The wife shall indemnify and hold the husband harmless from all claims and liabilities thereon. CT Page 10386
DEBTS AND LIABILITIES
The husband and the wife shall be equally responsible for the payment of any existing indebtedness shown on their respective current Financial Affidavits, covering the medical, dental and education expense of any of their children. Otherwise and except as set forth above, each party shall be solely responsible for and indemnify the other against all liabilities currently reflected on their respective financial affidavits.
INCOME TAXES
The parties shall share in proportion to their income any taxes due or refunds from the Internal Revenue Service and/or the State of Connecticut, for the period of time that they were married.
ATTORNEY'S FEES
Each party shall be solely responsible for the payment of their respective attorney's counsel fees.
CONTINGENT WAGE EXECUTION
A contingent wage execution is ordered with respect to the husband's alimony obligation until such time as he has retired. Thereafter, the alimony obligation shall be secured by the Qualified Domestic Relations Order referred to above.
MORTON I. RIEFBERG JUDGE OF THE SUPERIOR COURT